IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EDWARD MAX LEWIS,

      Plaintiff,      OPINION AND ORDER

v.

                14-cv-446-wmc

GEORGE STAMPER, *et al.*,

      Defendants.

In this *pro se* civil rights lawsuit, plaintiff Edward Max Lewis proceeds on claims that during his October 26, 2003, to June 28, 2004, detention at the Forest County Jail, the defendants violated his constitutional, statutory and state law rights by failing to provide him with adequate medical and mental health treatment, subjected him to inhumane conditions of confinement, and used excessive force against him. In light of a number of outstanding issues in this lawsuit, this order is an effort to streamline the parties' focus towards summary judgment and, if necessary, trial. Accordingly, this opinion will address:

- The John Doe defendants, who are subject to dismissal.

- Defendants' motion for summary judgment on exhaustion grounds (dkt. 67), which appears unnecessary.

- Defendants' Motion to Compel (dkt. 75), which I am granting in part with modification, and denying in part.

- Plaintiff's Motion for Assistance in Recruiting Counsel (dkt. 88), which I am denying without prejudice.

**John Doe Defendants**

It appears that dismissal of the John Doe defendants is appropriate. Lewis's claims include a claim that defendants George Stamper and "John Doe jail staff" subjected him

to inhumane conditions of confinement, and a claim that another John Doe entered his cell and used excessive force in response to Lewis's suicide threat. (Dkt. 36, at 11.) On April 13, 2017, I issued an order setting June 15, 2017, as the deadline for Lewis to amend his complaint and identify the John Doe defendants. (Supp. Prelim. Pretrial Conf. Order, dkt. 59.) The order specifically warned Lewis: "If plaintiff does not file an amended complaint identifying the Doe defendants by the deadline, then this court could dismiss all of plaintiff's claims against the Doe defendants." (*Id.*)

On May 5, 2017, when Lewis asked to extend the June 15 deadline, I denied his request as moot because he had served his discovery requests on defendants. I added that Lewis could renew his request if he needed additional time. (Dkt. 64.) While Lewis has submitted a number of filings since then, he never has requested additional time, nor has he submitted an amended complaint naming those defendants. Accordingly, the John Doe defendants are subject to being dismissed out of this lawsuit. Even so, I will give Lewis until **December 5, 2017,** both to file an amended complaint identifying the John Doe defendants *and* to explain why the presiding judge (Judge Conley) should grant leave to add these defendants to the case by name at this late date. If Lewis files nothing, then Judge Conley likely will conclude that Lewis has abandoned his claims against the Doe defendants.

**Exhaustion of Administrative Remedies (dkt. 67)**

Defendants filed a motion for partial summary judgment, seeking dismissal of all of Lewis's claims because he failed to file a grievance while he was incarcerated at the Forest

2

County Jail. Although I cannot resolve this motion in another judge's case, I am ordering the defendants to notify the court whether they wish to pursue it in light of the fact that Lewis no longer is confined in jail or prison. Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the [jail's] administrative rules require." *Pozo*, 286 F.3d at 1025.

The purpose of these requirements is to give the jail administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). If a prisoner fails to exhaust his administrative remedies before filing a lawsuit, then the court must dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, *defendants* bear the burden of establishing that plaintiff failed to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Based on Lewis's current address, it appears he has been released from incarceration and is on active community supervision, so the requirements of the PLRA would not apply to him if he chose to immediately refile a new lawsuit to pursue his constitutional claims

against defendants. *See Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998) (PLRA did not apply to former prisoner filing suit after his release); *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004) ("[T]he status of the plaintiff at the time he brings his suit" determines whether the plaintiff is a prisoner subject to the PLRA's exhaustion requirements). Thus, even if the presiding judge dismisses Lewis's claim for failure to exhaust, Lewis would be able to refile those claims without the need to exhaust his administrative remedies. *See Miniz v. Pazera*, 2007 WL 4233455, *4 (N.D. Ind. 2007) ("Even if a prisoner has a case dismissed for failure to exhaust available administrative remedies, they can refile the exact same complaint once they are released from prison without having to satisfy the exhaustion requirement.").

The parties have been engaging in substantive discovery related to all of Lewis's claims in this lawsuit for several months, and dispositive motions are due at the beginning of 2018. Given Lewis's active involvement in this lawsuit, it is logical to predict that in response to dismissal of these claims, Lewis promptly would file a new lawsuit to pursue them, resulting in the parties having to litigate a new lawsuit on a new timeline. This outcome appears to be an unintended consequence of defendants' motion that probably would result in more work for defendants and their attorneys rather than less.

That said, because Lewis *was* incarcerated at the time he filed suit, he is subject to the PLRA and defendants are entitled to assert an exhaustion defense. They should promptly notify the court whether they wish to pursue their exhaustion defense. If they do not withdraw their exhaustion motion, the presiding judge will resolve it.

**Motion to Compel (dkt. 75)**

Defendants Stamper, Hrouda, Forest County and League of Wisconsin Municipalities of Mutual Insurance have filed a motion to compel discovery on the ground that Lewis failed to respond in accordance with Federal Rules of Civil Procedure 33 and 34 to two discovery requests. First, defendants explain that Lewis has refused to sign a medical records authorization form that seeks his consent to disclose all of his medical records from October 26, 2001 to the present. (Dkt. 76-1, at 10.) Second, Lewis refused to provide the names of his treating doctors. Having been unsuccessful in resolving this dispute informally with Lewis, now defendants ask for one of two forms of relief: (1) an order striking plaintiff's claims regarding the tolling of the statute of limitations and barring evidence supporting a causal connection between injuries suffered in the Forest County Jail and later treatment; OR (2) an order directing plaintiff to sign the medical authorization form to release medical records, awarding them attorneys' fees incurred in bringing this motion, and admonishing plaintiff that further delays might result in dismissal of this case.

Lewis opposes the motion on the ground that the defendants' requests are overly broad because, in his view, the documents they seek would include records unrelated to the claims he is pursuing in this lawsuit. He also argues that the documents include sensitive information about his medical history as well as other individuals because he previously has been involved in group therapy. While I am sympathetic to Lewis's desire for privacy, I am granting defendants' latter request for relief in part, with a modification.

I agree with defendants that Lewis needs to sign a medical authorization form if he wants to succeed in this lawsuit. The bulk of Lewis's claims in this lawsuit challenge the

5

medical care he received during his 2003-2004 stay in the Forest County Jail, so any medical records or information about Lewis's health prior to, during, and after that period of time arguably are directly relevant. While the relevance of his medical records to his claims may dissipate with the passage of time between 2004 and the present, it does not dissipate with respect to one of his legal defenses: defendants explain that they are pursuing statute of limitations as an affirmative defense, and Lewis has responded that his the statute of limitations was tolled due to his mental and physical health problems. As such, records related to Lewis's mental and physical health from 2004 until when he filed his complaint (June 18, 2014), are relevant to whether his claims were tolled. Therefore, this information is discoverable. So in one sense, I agree with Lewis that defendants' request is overbroad, but only to the extent that the consent form discloses all medical records between when he filed this lawsuit and now. Therefore, I am *directing* Lewis to return signed and fully completed the requested medical authorization, with the modification that Lewis must consent to disclosure of his medical records from **October 26, 2001 to June 18, 2014.** He must return to defendants the modified form signed and fully completed by **December 4, 2017**.

This is a "direction," not an "order." This court does not compel parties in a lawsuit to disclose confidential medical or psychiatric information if they choose not to, but this choice has consequences. Lewis's failure to disclose this information likely will result in the court dismissing his medical-care related claims, or precluding him from asserting a tolling defense, or both. This is because it is not fair to defendants for Lewis to make the sort of claims that he has made here without giving the defendants access to the information that

6

underlies these claims so that the defendants may investigate and defend against these clams. Lewis may choose how he wishes to proceed, but he has to *choose*; he cannot have it both ways.

That said, although I am directing Lewis to sign the authorization form, I will not grant defendants' request for attorneys' fees because Lewis's objection to the disclosure of *all* of his medical records between 2001 to the present was not wholly frivolous.

**Motion for Assistance in Recruiting Counsel (dkts. 88, 90)**

Finally, Lewis seeks this court's assistance in recruiting counsel because this case involves complex legal issues, he is having trouble dealing with the procedural rules, and he suffers from a number of mental health issues that cause his functioning level to be extremely erratic. Lewis has submitted the names and addresses of seven law firms that he sent letters to in attempts to retain counsel on his own, and he avers that all of those attempts have been unsuccessful. Thus, I will accept that Lewis has fulfilled the requirement of attempting to retain a lawyer on his own. *Jackson v. Cty. of McLean,* 953 F.2d 1070, 1072–73 (7th Cir. 1992) ("the district judge must first determine if the indigent has made reasonable efforts to retain counsel and was unsuccessful or that the indigent was effectively precluded from making such efforts").

Nevertheless, I am denying his motion without prejudice because Lewis has failed to point to any specific instance so far in these proceedings that show that his mental health issues have made it excessively difficult for him to litigate his claims. *See Pruitt v. Mote,* 503 F.3d 647 (7th Cir. 2007) (en banc) (the central question in deciding whether to

7

request counsel for an indigent civil litigant is "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself").

As a starting point, the challenges facing Lewis are the same challenges that virtually every pro se litigant faces. Every year this court receives between 250-300 lawsuits filed by pro se plaintiffs who all would benefit from the assistance of a volunteer lawyer, yet this court has a pool of at most three dozen volunteer attorneys who will take one case a year. Thus, only those cases presenting exceptional circumstances, as defined by circuit law, can be considered for court assistance in recruiting volunteer counsel. At this point, Lewis's case does not appear to fall into this category.

First, Lewis has been litigating this case since 2014 and has demonstrated success, both procedurally and substantively, having won an appeal of this court's initial dismissal of his case. Lewis's comment that this case involves complex legal issues is a legitimate concern because it involves constitutional and state law challenges to the conditions of confinement Lewis dealt with at the jail, how jail staff responded to his need for mental health care, and an instance where one jail staff member used force upon him. However, the complexity and number of his claims does not militate toward providing him with the assistance of volunteer counsel at this point in the lawsuit.

Right now the parties are engaging in discovery, and dispositive motions are due at the beginning of January, 2018. As illustrated by my analysis of defendants' motion to compel, Lewis represented himself and protected his interests competently during the discovery phase. As to dispositive motions, in *every* lawsuit, including those where all parties

are represented by counsel, this court researches the applicable law on its own to ensure that it knows and properly applies the correct standards to the parties' claims and defenses. This practice, coupled with both sides' submissions in this lawsuit, leaves the court confident in its ability to answer correctly the legal questions posed without enlisting an attorney to assist Lewis. That said, if Judge Conley reviews the parties' summary judgment submissions and concludes that Lewis did, in fact, need counsel to represent him at the dispositive motion stage, then he likely will recruit counsel *sua sponte* on Lewis's behalf. Further, if Lewis clears the summary judgment hurdle and believes that he cannot adequately prepare for trial or actually try this case to a jury without the assistance of a lawyer, then he may renew his motion and Judge Conley will consider it in light of the situation as it presents itself at that time.

ORDER

IT IS ORDERED that:

(1) Plaintiff Edward Max Lewis may have until **December 4, 2017**, to file an amended complaint identifying the John Doe defendants and explaining why the presiding judge should not dismiss the John Doe defendants from this lawsuit for his failure to meet the June 15, 2017, deadline.

(2) Defendants may have until **December 4, 2017**, to notify the court whether they wish to pursue their exhaustion defense (dkt. 67) further.

(3) Defendants' Motion to Compel (dkt. 75) is GRANTED in part and DENIED in part. By **December 4, 2017**, Lewis is directed to return to defendants the

modified form consenting to disclosure of his medical records from **October 26, 2001 to June 18, 2014.**

(4)   Plaintiff's Motion for Assistance in Recruiting Counsel (dkt. 88) is DENIED without prejudice.

Entered this 20th day of November, 2017.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge