IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

EDWARD MAX LEWIS,

                          Plaintiff,                          OPINION AND ORDER

    v.

                                                            14-cv-446-wmc

GEORGE STAMPER, *et al.*,

                          Defendants.

*Pro se* plaintiff Edward Max Lewis filed this lawsuit on June 18, 2014, seeking to proceed on claims arising out of his being held at the Forest County Jail from October 26, 2003, to June 28, 2004, during which the defendants allegedly violated his constitutional, statutory and state law rights by (1) failing to provide him with adequate medical and mental health treatment and (2) subjecting him to inhumane conditions of confinement. When the lawsuit was first filed in 2014, the court dismissed it at the screening stage on statute of limitations grounds. (Dkt. #13.) However, the Court of Appeals for the Seventh Circuit reversed that judgment, concluding that it was error to dismiss Lewis's claims on statute of limitations grounds without any factual development, especially in light of his *pro se* status. *See Lewis v. Stenz*, 637 F. App'x 943 (7th Cir. 2016). The Seventh Circuit specifically held that Lewis's suit would be "timely if he was mentally ill, as Wisconsin defines that term, from October 2003 until the day he filed his complaint in June 2014." *Id.* at 944.

On remand, therefore, this court granted Lewis leave to proceed on November 30, 2016, and subsequently Lewis prosecuted his lawsuit *pro se*. Unfortunately, Lewis had ongoing difficulties representing himself, in particular balking at defendants' discovery

requests for documents related to his mental health between 2003 and 2014. These issues came to a head in late 2017 and early 2018, when defendants moved for summary judgment and to dismiss for failure to prosecute since Lewis continued to refuse to comply with their valid discovery requests despite being warned of the consequences of that refusal. (Dkt. ##107, 114.)

Fortunately for Lewis, in May of 2018, he was able to secure counsel, at which point the court held a telephonic status conference, and all the parties and their counsel agreed that the most efficacious course of action would be to set briefing on the limited issue of defendants' statute of limitations defense. (Dkt. #130.) More specifically, the court directed the parties to submit briefing and proposed findings of fact and evidence with respect to Lewis's argument that his mental incapacity since 2004 tolled the applicable six-year statute of limitations. Having now reviewed those submissions, the court concludes that Lewis has not proven by a preponderance of evidence that the statute of limitations was tolled for any period between October of 2004 and June of 2014, when he ultimately filed this lawsuit. As such, defendants are entitled to judgment in their favor on their statute of limitations defense.

UNDISPUTED FACTS

I. **Lewis's Mental Health Before 2003**

On August 17, 2000, Lewis was diagnosed by a therapist, Karen East, with Post-Traumatic Stress Disorder ("PTSD"), stemming from sexual and physical abuse that he and his siblings endured during their time in foster care. (Pl. Ex. A (dkt. #132-1).) The

record of Lewis's August 17 appointment, as well as Lewis's subsequent December 11, 2000, appointment indicate that Lewis reported "spells" in which he would black out for "brief periods," and he could not recall the details of what he did during those black outs. (Pl. Exs. A, B (dkt. ##132-1, 132-2).)

Later in 2000, Lewis and his siblings initiated a lawsuit against the Forest County Department of Health and Human Services over their placement in a violent home. As a part of that lawsuit, another psychologist, Dr. Thomas Daniels, issued a psychological evaluation of Lewis and his siblings on June 28, 2001. (Pl. Ex. D. (dkt. #132-4).)[1] In the report, Dr. Daniels walked through Lewis's history, that undisputedly involved physical and emotional abuse. As a part of the evaluation, Lewis also underwent a personality test, called the Minnesota Personality Inventory -2 ("MMPI-2").[2] According to Dr. Daniels' report, the results showed severe problems, finding that Lewis's "responses [were] similar to those given by hospitalized psychiatric patients" and that Lewis showed symptoms of PTSD and periods of depression and suicidal thinking. Still, Dr. Daniels also found that Lewis's answers to the questions suggested that Lewis was fatigued by the end of the test, and he may have attempted to "overstate psychological problems for the purpose of the current legal action." (*Id.* at 14.) For this reason, Dr. Daniels did not consider Lewis's MMPI-2 results in opining on his psychological functioning at that time, ultimately

---

[1] Defendants urge the court to seal this document from the public record, since it contains sensitive and personally identifiable information about Lewis's siblings, who are not part of this lawsuit. While no party has filed a motion to seal this document, the court finds good cause to do so and will so direct the clerk's office.

[2] The MMPI2 is the most widely used and researched psychometric test for measuring adult psychopathology. *See* https://apa.org/pubs/books/4317252 (last visited Sept. 25, 2019).

3

concluding that Lewis "does not appear to have any diagnosable psychological problems at this time." (*Id*.)

On March 22, 2002, East authored a "Discharge Summary," providing an overview of her treatment of Lewis. While confirming her PTSD diagnosis, she concluded that his "prognosis for continuing positive adaptation is good." (Pl. Ex. C (dkt. #132-3).)

II. **Lewis's Mental Health Record Between 2003 and 2014**

On October 26, 2003, Lewis was arrested in Forest County, Wisconsin. Upon his intake at the Forest County Jail, an inmate medical screening form was filled out for him. (Pl. Ex. F (dkt. #132-6).) As recorded, Lewis answered "yes" under the following categories: mental health, psychiatric treatment, attempted suicide (with the note "4 yrs ago"), and AODA treatment (with a note "1999"). *Id.* Lewis also indicated that he was prescribed Paxil at that time.[3]

On November 4, 2003, Lewis reported to jail staff that he was hearing voices and wanted to sleep all the time. He was then placed in J Block for medical observation. The record of Lewis's treatment indicates that Lewis had not been receiving his Paxil during this period. On January 9, 2004, Lewis underwent an evaluation to determine whether he was competent to stand trial with respect to the criminal charges arising from his October 2003 arrest. Answering in the affirmative, Dr. Michael Galli found as follows:

> [Lewis] has a thorough and accurate understanding of the charge he is facing. He has a fairly comprehensive understanding of the legal process ahead of him, having had contact with the system in the past. He knows what his

---
[3] Paxil is an antidepressant belonging to a group of drugs called selective serotonin reuptake inhibitors ("SSRI's"). *See* https://www.drugs.com/paxil.html (last visited Sept. 25, 2019).

> attorney is supposed to do for him, even though he persistently expresses doubts about his ability to tell his attorney things Mr. Lewis thinks must be understood about him. As best as I can glean from what he was willing to tell me, he wants to have his motives and actions understood, and sees this as an essential component to his defense. His reported inability to discuss these issues does not appear to be the result of any diagnosable mental disease or defect, but rather reflects that he is presenting as his general comfort level with discussing these things. As I understand the intent of this portion of the statute, a finding that the defendant is unable to work with an attorney should be due to some involuntary condition. Claiming to be uncomfortable or anxious or overly emotional in discussing things which can otherwise be adequately talked about might make a defendant unwilling to work with an attorney, but this does not appear to make him unable to do so.
>
> Based on all of the above, my conclusion, held to the requisite degree of professional certainly, is that Edward Max Lewis is competent to proceed in the matter currently pending.

(Ex. A to Smith Decl. (dkt. #139-1) at 6.)

Lewis was transferred to Dodge Correctional Institution ("DCI) in August of 2004. On August 31, 2004, an "Initial Psychiatric Report" was prepared at DCI, from which Lewis submitted one page as Exhibit H. (Dkt. #132-8.) That one page does not provide the report's author, but lists diagnoses of "Major Depressive Disorder with Psychotic Features," "History of Polysubstance Abuse" and "Possible PTSD." The narrative section further memorializes an apparent discussion the treatment provider had with Lewis about his medication and included a note that his risks of self-harm and harm to others were low.

Over the next decade, until Lewis filed his complaint in this lawsuit in June of 2014, he was housed at four different correctional institutions: DCI, Stanley Correctional Institution, Redgranite Correctional Institution, and Jackson Correctional Institution. On three occasions, Lewis was also transferred to the Wisconsin Resource Center ("WRC"), a jointly operated facility of the DOC and the Wisconsin Department of Health Services

that provides specialized mental health treatment for prisoners requiring more intensive services. Specifically, Lewis was transferred to WRC from: (1) August 22, 2006, to March 25, 2008 (approximately 30 months); (2) May 21, 2009, to September 30, 2009 (approximately 4 months); and (3) July 18, 2011, to February 15, 2012 (approximately 7 months). In total, therefore, Lewis spent about 41 months at WRC, out of his approximately 118 months in DOC's custody before filing suit.

To support his tolling defense, Lewis directs the court to a few of his treatment records during this time. Initially, Lewis cites a record from the DOC's Psychological Services, which shows that as of January 17, 2005, his Major Depressive Disorder with Psychotic Features and PTSD diagnoses were reaffirmed. That record shows that in the 2005 evaluation by the DOC's Psychological Services, Lewis presented as "goal oriented" and "coherent," and he appeared "to have at least average intellectual decision making abilities." (Pl. Ex. I (dkt. #131-9).) Next Lewis submits a September 3, 2009, record that provides an overview of his last stint at WRC and his reported state of mind at that time. (Pl. Ex. J (dkt. #131-10).) Among other things, the overview sets forth the reasons for Lewis's readmission to WRC was stabilization of mental health, medication re-evaluation, and the need for more intensive therapy due to suicidal thoughts. It also listed his diagnoses: Major Depressive Disorder, Recurrent, Severe with Psychotic Features; PTSD, Chronic; Personality Disorder Not Otherwise Specified with Depressive and Borderline Features; and Seizure Disorder. It further listed his symptoms as: occasional suicidal ideation without intent to act; history of self-harm behaviors; depressed mood; loss of energy; social withdrawal; irritability due to impatience; auditory hallucination; adjustment

difficulties; avoidance of stressful situations; and limited coping ability. Finally, in the progress section of the record, there is a note that Lewis commented: "When I can see a goal for myself down the road[,]"; "I'm ready to return to DOC[.] I'm feeling good. I can work there"; and "I feel like I'm able to participate in the process to return." (*Id.*)

On January 10, 2013, while at Redgranite Correctional Institution, Lewis was diagnosed with Major Depression, PTDS, Personality Disorder with Borderline and Antisocial Traits, and Epilepsy. Also in 2013, a DOC Psychiatric Report further noted that Lewis said "his thoughts are totally clear on the Wellbutrin." (Pl. Ex. K (dkt. #131-11).) At that time, the psychiatrist's impression was that Lewis appeared "to be a relatively intelligent gentleman who understands his medical and psychiatric conditions." (*Id.*)

To support their statute of limitations defense, defendants submitted an overview chart that summarizes the record of Lewis's treatment between 2004 and 2014, noting that none of the entries reflect any ongoing issues with Lewis's ability to understand his surroundings, nor does Lewis object to this chart as not accurately summarizing the record of his interactions with staff. Instead, Lewis's position is that throughout this time frame he made suicide attempts on multiple occasions, had hallucinations, black outs and panic episodes, and struggled with disassociation. In addition, Lewis cites to a psychologist's 2017 report indicating that Lewis: would pick at his fingernails, toenails and eyebrows; suffered complex partial seizures; and received a variety of psychotropic medications.[4]

---

[4] The evidence Lewis cites in support of these statements is Exhibit L, a letter from licensed psychologist Hollinda Wakefield, dated April 3, 2017. (Dkt. #132-12.) In a letter to Lewis, Wakefield recounted reviewing Lewis's records from WRC and the DOC, the 2001 and 2004 evaluations, and Lewis's legal materials. Based on that summary, Wakefield concluded that, even though he could assist an attorney, Lewis was not competent to "appeal pro se." (*Id.*)

7

However, Lewis does not affirmatively plead or argue that he was unaware of his legal rights between 2003 and 2014.

### III. Lewis's Other Legal Matters

On at least two occasions between 2003 and 2014, Lewis was represented by counsel in legal proceedings. First, between October 26, 2005, and May 24, 2006, Lewis was in his own divorce proceedings. *Lewis v. Lewis*, Case No. 2005-FA-58 (Forest Cty. 2005), *available at* https://wcca.wicourts.gov (last visited Nov. 13, 2018). The publicly available records of those proceedings indicate that Lewis and his former spouse were both represented by counsel, and they entered into a stipulated divorce and marital settlement agreement. Nothing from the record suggests that Lewis's mental state prevented his participation, much less rendered him unable to participate, in those proceedings or in the eventual settlement agreement.

Second, on June 28, 2010, Lewis filed a *pro se* petition for a writ of habeas corpus in the Forest County Circuit Court. *See Lewis v. Hepp*, Case No. 2010-cv-82 (Forest Cty 2010). In challenging his criminal conviction, Lewis filed multiple briefs *pro se*, asserting, among other arguments, that he had not been competent to stand trial and the jury was biased against him. During an April 28, 2011, telephonic hearing, the court asked Lewis if he felt competent to proceed *pro se*. Lewis responded that he felt competent at that time, but that he may have a problem at some point because he suffers from "complex partial seizures." Ultimately the court dismissed Lewis's petition for lack of jurisdiction.

OPINION

Because Congress did not impose a time limit on civil actions brought under 42 U.S.C. § 1983, the Supreme Court ultimately instructed courts to borrow the state statute of limitations "most analogous" to the remedy afforded by § 1983. *Owens v. Okure*, 488 U.S. 235, 239 (1989) (citations omitted). In Wisconsin, the statute of limitations for § 1983 actions is six years from the time an injury accrues. *See* Wis. Stat. § 893.53; *Gray v. Lacke*, 885 F.2d 399, 408-09 (7th Cir. 1989) (holding that the six-year "personal rights" statute of limitations applies to § 1983 actions, rather than the three-year period for personal injury); *Hemberger v. Bitzer*, 216 Wis. 2d 509, 519, 574 N.W.2d 656, 660 (1998) (holding that the six-year period found in Wis. Stat. § 893.53 for Wisconsin's general and residual personal injury statute of limitations applies to claims brought under 42 U.S.C. § 1983). Moreover, a claim begins accruing from the date the plaintiff knew or should have known that he sustained an injury. *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 801-02 (7th Cir. 2008); *Barry Aviation Inc. v. Land O'Lakes Muni. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004).

Here, it is undisputed that the claims raised in the instant complaint began accruing in 2003 and 2004. As previously noted, however, Wisconsin law allows for tolling of up to 5 years if the plaintiff was "mentally ill" when the injury accrued and continues to be mentally ill. *See* Wis. Stat. § 893.16(1). A plaintiff is "mentally ill" for purposes of the Wisconsin tolling provision if he is or was (1) "functionally unable to understand or appreciate the situation giving rise to the legal claim," or (2) "functionally unable to

understand legal rights and appreciate the need to assert them." *Storm v. Legion Ins. Co.*, 2003 WI 120, ¶ 49, 265 Wis. 2d 169, 203, 665 N.W.2d 353, 369 (Wis. 2003); *see also Miller v. Runyon*, 77 F.3d 189, 191-92 (7th Cir. 1996) ("[M]ental illness tolls a statute of limitations only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them.") (citations omitted).

A plaintiff wishing to claim mental illness under Wis. Stat. § 893.16(l) must prove his condition by a preponderance of the evidence. *Storm*, 2003 WI 120, ¶ 46 n.29. Even evidence that a plaintiff has been *diagnosed* with a mental illness does not necessarily establish a mental illness for tolling purposes. *Id.* ¶ 41; *Werner v. Potter*, No. 04-C-0557(E), 2006 WL 839156, at *26-27 (E.D. Wis. Mar. 24, 2006). Furthermore, plaintiff has the burden of proving that the mental illness existed at the time his claim arose. *See* Wis. Stat. § 893.16(3).

On this more fulsome record, defendants assert entitlement to summary judgment because Lewis's claims are untimely as a matter of law. More specifically, they point out that Lewis's claims arose during his time in the Forest County Jail between October 26, 2003, and June 28, 2004, and yet he did not file this lawsuit until June 18, 2014. Not only is this well beyond the six-year statute of limitations related to his claims on its face, defendants assert that there is no evidence that statute of limitations was ever tolled due to a mental illness.

Based on this more developed record, the court agrees. To start, the evidence Lewis submitted does not support a reasonable inference that he suffered from a mental illness as defined by Wis. Stat. § 893.16 at the time his claims accrued between on or before June

of 2004.  Certainly, a jury could find that Lewis was suffering from mental health issues during that time, as well as before he was arrested in 2004, and the records of his incarceration further support a finding that Lewis had been diagnosed with PTSD and depression.  Even when considered with his reported symptoms of blacking out and experiencing hallucinations periodically, those mental health issues do *not* equate to a diagnosed mental illness sufficient to toll the statute of limitations under Wisconsin law.  The reason is straightforward:  records of Lewis's mental health treatment consistently show that Lewis was aware of his surroundings, expressed frustrations to his providers, capable of communicating effectively with his care providers, and actually reported an improvement in his symptoms by 2009.  *See Storm*, 265 Wis.2d at 203 (defining functional deficiencies necessary to toll statute of limitations under Wisconsin law).

Even if his various diagnoses were sufficient to give rise to an inference of a functionally disabling mental illness under Wisconsin law, Lewis has submitted no concrete evidence suggesting that his PTSD symptoms, depression, seizure disorder or other conditions left him unaware of his legal rights and unable to assert them between 2003 and 2004, much less continually since that time up until 2014.  While case law certainly does not require production of medical records explicitly reporting that he was not mentally capable of appreciating his legal rights, Lewis has not even provided details as to *how* his alleged mental illness affected his processing of experiences at the jail throughout this time period, much less his ability to pursue his legal rights to challenge defendants' alleged misconduct.  *See Miller*, 77 F.3d at 191-92.

While Lewis might be relying on his self-reports of intermittent "black outs" for

"brief periods" to support a finding that he was mentally ill, Lewis's reports indicate that these episodes were temporary and only occurred during times of stress, rather than averring that he suffered from a continuous "black out" between 2004 and 2014 (or even repeated, long-lasting blackout periods during this decade-long stretch).

Nor does Lewis explain how his PTSD or other mental health issues rendered him unable to process the events at the Forest County Jail at least enough to understand his right to pursue administrative, state or federal relief. Under Wisconsin law, the absence of such evidence precludes his tolling defense. *See Winston v. Pamela*, No. 16-cv-610-jdp, 2016 WL 6808181, at *2 (W.D. Wis. Nov. 17, 2016) (plaintiff not entitled to tolling due to mental illness because he did "not articulated specifically why or how he could not bring [his] claims for abuse over the last two decades").

Instead, the court is left with Lewis's wholly conclusory, proposed findings of fact that he was "mentally ill when he was arrested in October of 2003, suffering from complex partial seizure disorder and PTSD"; he "continued to suffer from multiple forms of mental illness in June of 2014"; and because of his diagnoses, "Lewis was functionally unable to understand or appreciate the situation giving rise to his legal claims." (Pl. PFOF (dkt. #131) ¶¶ 30-32.) Such broad, unsupported assertions are simply insufficient to permit a reasonable fact finder to conclude that a mental illness rendered him incapable of asserting his legal rights. *See Hewitt v. Morgan*, No. 08-cv-172-BBC, 2008 WL 4175031, at *1 (W.D. Wis. Apr. 22, 2008) ("Petitioner's self-serving allegations of mental incapacitation fall far short of showing that he was *incapable* of acting on his legal rights during the entire seven years between the time he was convicted and the time he filed a motion for postconviction

relief in state court.").

Finally, defendants' *undisputed* evidence in opposition to plaintiff's claim for tolling removes any doubt about the nature of Lewis's mental state, at least in 2004, 2005 and 2010. As an initial matter, defendants point to Dr. Galli's January 2004 findings under Wis. Stat. § 971.14 that Lewis was competent stand trial, which strongly suggests that his mental health challenges did not prevent him from recognizing and asserting his legal rights related to his time at the jail. Even more specifically, Dr. Galli concluded that Lewis was (1) well-aware of the charges he was facing, (2) not reporting any delusional beliefs or hallucinations, and (3) actually expressing "logical and coherent" thoughts. Additionally, while Dr. Galli did note that Lewis appeared to be hesitant to discuss certain issues, he attributed Lewis's hesitancy to discomfort with the subject matter, *not* to any mental illness.

While acknowledging that the competency standard under Wis. Stat. § 971.14 is not the same as the "mental illness" standard under Wis. Stat. § 893.16, defendants persuasively argue that Dr. Galli's competency finding -- which Lewis does not dispute -- is at least relevant evidence of Lewis's mental state as of January 2004. Even more persuasive, defendants point out that during the same time frame that Lewis alleges mentally illness so profound as to toll the relevant statute of limitations, he was nevertheless capable of not just communicating lucidly with prison staff, but also representing himself in ongoing legal matters. Indeed, it is undisputed that Lewis not only actively participated in divorce proceedings between 2005 and 2006, and he *initiated* a *pro se* habeas petition in 2010, representing to the court that he was competent to proceed in that matter. Perhaps most telling is Lewis's complete failure to even begin squaring his

13

ability to participate in those legal matters with his complete failure to pursue this action during the same time period.

Since the evidence of record precludes a reasonable finding that Lewis's mental illness tolled the applicable six-year statute of limitations, defendants are entitled to summary judgment.

ORDER

IT IS ORDERED that:

1. Defendants are GRANTED summary judgment on plaintiff's claim that his claimed mental health issues tolled the applicable six-year statute of limitations otherwise barring his substantive claims in this case.

2. The clerk of court is directed to enter final judgment in defendants' favor and close this case.

3. The clerk of court is directed to SEAL from the public record Plaintiff's Exhibit D (dkt. ##131-4, 132-4).

Entered this 25th day of September, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge